FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 26, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MADISON H.,[1]

          Plaintiff,

  v.

KILOLO KIJAKAZI, ACTING
COMMISSIONER OF SOCIAL
SECURITY,[2]

          Defendant.

No. 2:20-cv-00350-MKD

ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

**ECF Nos. 18, 20, 26, 31**

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned

identifies them by only their first names and the initial of their last names. *See*

LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9,

2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo

Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further

action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment, ECF Nos. 18, 20, along with Plaintiff's supplemental motion for summary judgement, ECF No. 26, and Plaintiff's motion to strike the issue raised in the supplemental motion, ECF No. 31. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion for summary judgment, ECF No. 18, and grants Defendant's motion for summary judgment, ECF No. 20. Plaintiff's supplemental motion for summary judgement is denied as moot, ECF No. 26, and Plaintiff's motion to strike the issue, ECF No. 31, is granted.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and

citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.902(a).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

**FIVE-STEP EVALUATION PROCESS**

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

1    has lasted or can be expected to last for a continuous period of not less than twelve

2    months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

3    "of such severity that he is not only unable to do his previous work[,] but cannot,

4    considering his age, education, and work experience, engage in any other kind of

5    substantial gainful work which exists in the national economy."  42 U.S.C. §

6    1382c(a)(3)(B).

7        The Commissioner has established a five-step sequential analysis to

8    determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

9    416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

10   activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

11   gainful activity," the Commissioner must find that the claimant is not disabled.  20

12   C.F.R. § 416.920(b).

13       If the claimant is not engaged in substantial gainful activity, the analysis

14   proceeds to step two.  At this step, the Commissioner considers the severity of the

15   claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

16   "any impairment or combination of impairments which significantly limits [his or

17   her] physical or mental ability to do basic work activities," the analysis proceeds to

18   step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

19   this severity threshold, however, the Commissioner must find that the claimant is

20   not disabled.  *Id.*

ORDER - 4

1    At step three, the Commissioner compares the claimant's impairment to

2  severe impairments recognized by the Commissioner to be so severe as to preclude

3  a person from engaging in substantial gainful activity.  20 C.F.R. §

4  416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the

5  enumerated impairments, the Commissioner must find the claimant disabled and

6  award benefits.  20 C.F.R. § 416.920(d).

7    If the severity of the claimant's impairment does not meet or exceed the

8  severity of the enumerated impairments, the Commissioner must pause to assess

9  the claimant's "residual functional capacity."  Residual functional capacity (RFC),

10  defined generally as the claimant's ability to perform physical and mental work

11  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

12  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

13    At step four, the Commissioner considers whether, in view of the claimant's

14  RFC, the claimant is capable of performing work that he or she has performed in

15  the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is

16  capable of performing past relevant work, the Commissioner must find that the

17  claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of

18  performing such work, the analysis proceeds to step five.

19    At step five, the Commissioner considers whether, in view of the claimant's

20  RFC, the claimant is capable of performing other work in the national economy.

ORDER - 5

20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner

must also consider vocational factors such as the claimant's age, education and

past work experience. *Id.* If the claimant is capable of adjusting to other work, the

Commissioner must find that the claimant is not disabled. 20 C.F.R. §

416.920(g)(1). If the claimant is not capable of adjusting to other work, the

analysis concludes with a finding that the claimant is disabled and is therefore

entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above.

*Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to

step five, the burden shifts to the Commissioner to establish that (1) the claimant is

capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On January 30, 2017, Plaintiff applied for Title XVI supplemental security

income benefits alleging an amended disability onset date of January 30, 2017. Tr.

15, 77, 182-87. The application was denied initially, and on reconsideration. Tr.

110-18, 122-28. Plaintiff appeared before an administrative law judge (ALJ) on

January 8, 2020. Tr. 37-76. On February 6, 2020, the ALJ denied Plaintiff's

claim. Tr. 12-36.

ORDER - 6

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since January 30, 2017.  Tr. 17.  At step two, the ALJ found that Plaintiff has the following severe impairments: asthma, obesity, and general anxiety disorder.  Tr. 18.

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.  The ALJ then concluded that Plaintiff has the RFC to perform medium work with the following limitations:

> She can lift/carry 50 pounds occasionally and 25 pounds frequently; stand and walk for 6 hours and sit for 6 hours in an 8-hour workday with normal breaks, push and pull within medium exertional level. She can frequently climb ramps and stairs, and crawl.  She can occasionally climb ladders, ropes and scaffolds.  She can unlimitedly balance, stoop, and crouch.  She should avoid concentrated exposure to pulmonary irritants, such as fumes, odors, dust, and gases.  She can understand, remember and carry out simple instructions and exercise simple workplace judgement.  She can perform work that is learned on the job in less than 30 days by short demonstration and practice or repetition.  She can deal with occasional changes in the work environment.  She can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required.  She can do work that requires no interaction with the general public to perform the work tasks.  [This] does not preclude working [in an] environment where [the] public is present.

Tr. 22-23.

At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 30.  At step five, the ALJ found that, considering Plaintiff's age, education, work

ORDER - 7

experience, RFC, and testimony from the vocational expert, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform, such as kitchen helper, laundry worker, housekeeper, and small parts assembler. Tr. 31.  Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision.  Tr. 32.

On July 23, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  Plaintiff raises the following issues for review:

1.  Whether the ALJ properly evaluated the medical opinion evidence; and

2.  Whether the ALJ conducted a proper step-five analysis.[3]

[3] Plaintiff raises the medical opinion evidence and step-five issues together in her briefing.  They are separated here for ease of discussion.

ORDER - 8

ECF No. 18 at 2.[4]

## DISCUSSION

### A. Medical Opinion Evidence

Plaintiff contends the ALJ erred in his analysis of the opinions of Lewis Martin, M.D.; Jan Lewis, Ph.D.; Kristine Harrison, Psy.D.; and Thomas Genthe, Ph.D.  ECF No. 18 at 3-16.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant

---

[4] Plaintiff also filed a supplemental motion for summary judgement, arguing the ALJ's decision was Constitutionally defective because the ALJ and Appeals Council derived authority from a Commissioner whose appointment and tenure were unconstitutional, due to a removal provision that violated separation of powers principles.  ECF No. 26.  The Ninth Circuit recently addressed the issue, severing the unconstitutional clause at issue, determining that there was no reason to regard any of the actions taken by the agency as void, and holding that unless a claimant demonstrates actual harm the unconstitutional provision has no effect on her case.  *Kaufmann v. Kijakazi*, No. 21-35344, 2022 WL 1233238, at *2, 4-6 (9th Cir. Apr. 27, 2022).  Plaintiff subsequently filed an unopposed motion to strike the issue.  ECF No. 31.

(examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201-02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* at 1202. "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

ORDER - 10

1    Generally, an ALJ should accord more weight to the opinion of a treating or

2    examining physician than to that of a nonexamining physician.  *See Andrews v.*

3    *Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995).  However, the opinion of a

4    nonexamining physician may serve as substantial evidence if it is "supported by

5    other evidence in the record and [is] consistent with it."  *Id.* at 1041.  An ALJ may

6    reject the opinion of a nonexamining physician by reference to specific evidence in

7    the medical record.  *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998)

8    (citations omitted).

9        *1.  Dr. Martin*

10    In September 2017, Dr. Martin, a nonexamining physician, opined Plaintiff

11    could occasionally lift and carry 20 pounds, frequently lift and carry ten pounds,

12    stand and walk about six hours in an eight hour day, and sit for about six hours in

13    an eight hour day; she could frequently climb ramps and stairs, kneel, and crawl;

14    and occasionally climb ladders ropes and scaffolds; and she should avoid

15    concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  Tr. 98-

16    99.  The ALJ gave little weight to the portion of Dr. Martin's opinion limiting

17    Plaintiff to light exertion.  Tr. 27-28.  As Dr. Martin is a nonexamining source, the

18    ALJ must reference specific evidence in the medical record in order to discount his

19    opinion.  *Sousa*, 143 F.3d at 1244.

20

First, the ALJ gave little weight to Dr. Martin's opinion that Plaintiff was limited to light exertion because "it appears this was based primarily on [Plaintiff's] obesity," which the ALJ concluded should not be a factor in assessing the RFC.  Tr. 27.  Plaintiff points out that under SSR 19-2p an ALJ "must consider the limiting effects of obesity when assessing a person's RFC."  ECF No. 18 at 5; SSR 19-2p, 2019 WL 2374244, at *4 (effective May 20, 2019).  SSR 19-2p indicates that "as with any other impairment, [the ALJ] will explain how we reached our conclusion on whether obesity causes any limitations" and that "a person may have limitations in any of the exertional functions, which are sitting, standing, walking, lifting, carrying . . . [we] assess the RFC to show the effect obesity has upon the person's ability to perform routine movement and necessary physical activity within the work environment."  *Id.*  Further, the SSR explains the ALJ is to "consider all work-related physical and mental limitations, whether due to a person's obesity, other impairment(s), or combination of impairments."  *Id.*  Here, Dr. Martin opined Plaintiff was limited to light work and noted that these limitations were due to her morbid obesity, with a BMI of 63, and asthma.  Tr. 98-99.  The ALJ erred by finding Dr. Martin's opinion was entitled to little weight because it appeared primarily based on Plaintiff's obesity.  However, any error in the ALJ's finding obesity should not be a factor in assessing the RFC was

1   harmless, as the ALJ gave other reasons supported by substantial evidence to give

2   Dr. Martin's opinion little weight, as discussed *infra*.

3          The ALJ gave more weight to the opinion of examining physician Dr. Weir

4   than the opinion of nonexamining physician Dr. Martin.  Tr. 28.  Defendant points

5   out that Plaintiff did not challenge this reason for rejecting Dr. Martin's opinion.

6   ECF No. 20 at 7-8.  The Court ordinarily will not consider matters on appeal that

7   are not specifically and distinctly argued in an appellant's opening brief.  *See*

8   *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.

9   2008).  Rather, the Court will "review only issues which are argued specifically

10  and distinctly." *Independent Towers of Washington v. Washington*, 350 F.3d 925,

11  929 (9th Cir. 2003).  However, because the ALJ erred in his rationale concerning

12  obesity, which was the only reason Plaintiff challenged, the Court will also discuss

13  the other reason the ALJ gave to discount Dr. Martin's opinion.

14         Here, the ALJ gave more weight to Dr. Weir's opinion that Plaintiff had no

15  exertional limits than he did to Dr. Martin's opinion she was limited to light work.

16  Tr. 28.  In August 2017, Dr. Weir performed a consultative examination of

17  Plaintiff and rendered an opinion on her level of functioning.  Tr. 347-50.  Dr.

18  Weir opined Plaintiff had no exertional limitations, but that due to asthma she

19  should avoid exposure to dust, smoke, fumes, and other pulmonary irritants.  Tr.

20  350.  The ALJ gave more weight to Dr. Weir because Dr. Weir had the opportunity

ORDER - 13

to examine Plaintiff and his opinion was more consistent with the record as a whole. *Id.* Generally, an examining physician's opinion carries more weight than a reviewing physician. *Holohan*, 246 F.3d at 1202. Additionally, the more consistent a medical opinion is with the record as a whole, the more weight the ALJ will give it. 20 C.F.R § 416.927(c)(4). An ALJ may also discredit physicians' opinions that are unsupported by the record as a whole. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Here, the ALJ noted "rather normal objective findings" from the examinations of Dr. Weir and other providers, along with records showing Plaintiff's normal presentation at appointments and her activities of daily living including work as a babysitter. Tr. 28 (citing, *e.g.*, Tr. 302, 305, 318, 348-50, 427, 430, 504-05, 509); *see also* Tr. 570, 575, 594. The ALJ reasonably gave the opinion of Dr. Martin less weight than the opinion of Dr. Weir because Dr. Weir had the opportunity to examine Plaintiff, and the ALJ also explained that that Dr. Weir's opinion was more consistent with the record, including the examinations of other providers. The ALJ referenced specific evidence in the medical record in discounting Dr. Martin's opinion, and his findings are supported by substantial evidence.

   *2. Dr. Genthe*

   On July 3, 2018, Dr. Genthe performed a psychological/psychiatric evaluation on behalf of Washington State DSHS and rendered an opinion on

ORDER - 14

Plaintiff's level of functioning.  Tr. 698-704.  Dr. Genthe diagnosed her with major depressive disorder, unspecified; panic disorder; and agoraphobia.  Tr. 700.  He opined Plaintiff had marked limitations in her ability to ask simple questions or request assistance, communicate and perform effectively in a work setting, and maintain appropriate behavior in a work setting, and complete a normal work day and work week without interruptions from psychologically based symptoms; she had moderate limitations in her ability to understand, remember and persist in tasks by following detailed instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances without special supervision, adapt to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, and set realistic goals and plan independently; and mild or no limitations in her ability to learn new tasks, perform routine tasks without special supervision, and make simple work related decisions.  Tr. 700-01.  Dr. Genthe opined Plaintiff's mental impairments overall have a marked severity rating.  Tr. 701.  He opined she would be so limited for 12 months with available treatment, and that vocational training or services would minimize or eliminate barriers to employment.  *Id.*  The ALJ gave Dr. Genthe's opinion little weight.  Tr. 29.  Because Dr. Genthe's opinion was contradicted by the opinions of Dr. Lewis, Tr. 86-88, and Dr. Harrison, Tr. 99-101, the ALJ was required to provide specific and legitimate reasons to reject Dr. Genthe's opinion.  *Bayliss*, 427 F.3d at 1216.

1    First, the ALJ gave little weight to Dr. Genthe's opinion Plaintiff had

2 marked limitations, because these limitations were provided in checked boxes with

3 "little to no explanation [for the] answers." Tr. 30.  An ALJ "need not accept the

4 opinion of any physician . . . if that opinion is brief, conclusory and inadequately

5 supported by clinical findings." *Bray,* 554 F.3d at 1228.  However, if treatment

6 notes are consistent with the opinion, a conclusory opinion, such as a check-the-

7 box form, may not automatically be rejected.  *See Garrison v. Colvin*, 759 F.3d

8 995, 1014 n.17 (9th Cir. 2014); *see also Trevizo v. Berryhill*, 871 F.3d 664, 677 n.4

9 (9th Cir. 2017) ("[T]here is no authority that a 'check-the-box' form is any less

10 reliable than any other type of form").

11    Here, Plaintiff points out that Dr. Genthe performed a clinical interview and

12 mental status exam, during which Plaintiff reported a history of panic disorder,

13 agoraphobia, and clinical depression; Dr. Genthe also observed Plaintiff's

14 depressed mood and anxious affect and concluded in a narrative portion of his

15 evaluation that her "prognosis is viewed as guarded . . . she is unlikely to function

16 adequately in a work setting until her psychological symptoms have been managed

17 more effectively." ECF No. 18 at 10; *see* Tr. 701-02.  Any error was harmless,

18 however, as the ALJ gave other specific and legitimate reasons supported by

19 substantial evidence to give Dr. Genthe's opinion little weight, as discussed *infra*.

20

1    Next, the ALJ found Dr. Genthe's marked limitations were inconsistent with

2 the longitudinal record.  Tr. 30.  An ALJ may discredit physicians' opinions that

3 are unsupported by the record as a whole.  *Batson*, 359 F.3d at 1195.  Here, the

4 ALJ noted claimant's typically normal behavior at appointments, where she "often

5 show[ed] cooperative, friendly, pleasant, polite, claim, responsive, talkative, and/or

6 informative behavior," along with normal speech, intact attention and

7 concentration, "and normal, positive, or forward thinking mood and/or affect

8 without depression, anxiety, or agitation."  Tr. 30 (citing, e.g., Tr. 317-18, 328,

9 334, 361, 371, 439, 512, 560, 601, 716, 737).

10    At a psychological evaluation in 2017, for example, the examining

11 psychologist, Dr. Ford, observed Plaintiff was cooperative, made direct eye

12 contact, and had "reserved but good social skills"; she was polite and responsive to

13 questions, her speech was normal, and she expressed herself well.  Tr. 328.  The

14 mental status exam at that time was generally normal, and Dr. Ford opined

15 Plaintiff's ability to sustain concentration and persistence was "good" and that she

16 "would adapt to new environmental conditions if she knew she needed to and it

17 benefited her.  With encouragement she does well."  Tr. 329.  Dr. Ford also noted

18 "she would benefit from going back on medication which she felt was helpful,

19 finish high school, and she has the goal of becoming a teacher."  Tr. 330.

20 Additionally, counseling records from 2017 show she reported she needed

ORDER - 17

counseling "due to her application for SSI, but also her anxiety and depression are significant right now and she is losing motivation to do things during the day."  Tr. 555.  In May 2017, however, she reported she was excited about a job opportunity to watch five children of friends and get paid through the state.  Tr. 563.  Plaintiff's counselor observed her mood was happy and excited and her affect was congruent, and noted Plaintiff attributed the change "to the medication, not going to school an[y] longer and also having a job opportunity."  *Id*.  Records from April 2019 show her counselor noted several missed appointments and they "discussed importance of attending sessions if [Plaintiff] would like to see changes in her mental health."  Tr. 657.  At that time, her counselor also noted they "discussed the paperwork from her lawyer regarding her SSI case, and … [her counselor] suggested that her PCP may be better and more appropriate to fill out that"; they "discussed [Plaintiff] taking ownership of her adult life such as deciding what she wanted to do and where she wanted to live."  Tr. 657.  Additionally, later that month the counselor noted Plaintiff's goals such as going to school and getting a diploma, driver's license, a job, and housing, were "more goals surrounding life skills rather than therapy related goals" and she suggested Plaintiff transfer to case management services instead of therapy.  Tr. 687.  The ALJ reasonably found Dr. Genthe's opinion was inconsistent with the longitudinal record.  This was a specific and legitimate reason, supported by substantial evidence, to reject Dr.

Genthe's opinion. Even if the medical opinion evidence could be interpreted more favorably to Plaintiff, if it is susceptible to more than one rational interpretation, the ALJ's ultimate conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Finally, the ALJ found the opinion Plaintiff had marked limitations was inconsistent with Plaintiff's activities of daily living. Tr. 30. An ALJ may discount a medical source opinion to the extent it conflicts with the claimant's daily activities. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Here, the ALJ noted Plaintiff was able to attend treatment and was independent in activities of daily living including personal hygiene, meal preparation, housework, reading, and spending time with family, along with work activity as a babysitter. Tr. 30 (citing, e.g., Tr. 218-25, 327, 429, 549, 606). In August 2017, she also reported she was planning a vacation to Oregon and was watching children of her sister and other families five days a week. Tr. 575. Later in 2017, she reported she was becoming overwhelmed "watching several kids, some of which is during the night while their parents work." Tr. 587. In 2018, she reported her anxiety was not as high, and she was busy watching children and "being in charge" while her mother was gone; she reported she went grocery shopping with her sister and was tired due to her work schedule. Tr. 608. In 2019, she reported she would like to get out of the house more, and that barriers to

ORDER - 19

leaving the house included baby-sitting her niece and nephew as "it is a lot of work

to get them ready to go to the park."  Tr. 660.  The ALJ's conclusion that Dr.

Genthe's opinion was inconsistent with Plaintiff's activities of daily living was a

specific and legitimate reason, supported by substantial evidence, to reject the

opinion.

### 3.  Dr. Lewis and Dr. Harrison

In April 2017, a reviewing psychologist, Dr. Lewis, opined Plaintiff could

sustain concentration and persist at simple and complex tasks, but she should

perform work in a setting that does not require a high degree of social interaction

or distraction from coworkers or the public; and she could perform work requiring

no more than occasional, cursory interaction with the general public, and

occasional interaction with a small group of coworkers; and she could perform

work that is predictable in nature, and required no more than occasional

adjustments to setting and task.  Tr. 86-88.  In July 2017, reviewing psychologist

Dr. Harrison affirmed the opinion.  Tr. 99-101.  The ALJ gave partial weight to the

opinions of Dr. Lewis and Dr. Harrison, with "significant weight to the portions of

their opinions that [Plaintiff] should be limit[ed] to work that is predictable in

nature" and "requires [no] more than occasional adjustments to setting and task";

"little weight" to the portion of the opinion that she can "persist at complex tasks";

and "significant weight" to the portion of the opinion that "she should perform

ORDER - 20

1  work in a setting that does not require a high degree of social interaction or

2  distraction from coworkers or the public."  Tr. 28.

3          Plaintiff contends the ALJ failed to explain his departure from the opinion of

4  Dr. Lewis and Dr. Harrison in terms of her social restrictions and the need for a

5  predictable work environment.  ECF No. 18 at 8-10.  Specifically, Plaintiff argues

6  that rather than restricting Plaintiff to no more than occasional interaction with a

7  small group of coworkers, the "only restriction the ALJ placed on her was a

8  preclusion from working in close coordination with coworkers where teamwork is

9  required"; Plaintiff also contends the ALJ "omitted the need for a predictable work

10  environment."  *Id.* at 8-9 (citing Tr. 22-23).  "[T]he ALJ is responsible for

11  translating and incorporating clinical findings into a succinct RFC."  *Rounds v.*

12  *Comm'r of Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015).  To the extent the

13  evidence could be interpreted differently, it is the role of the ALJ to resolve

14  conflicts and ambiguity in the evidence.  *See Morgan v. Comm'r of Soc. Sec.*

15  *Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999).  Where evidence is subject to more

16  than one rational interpretation, the ALJ's conclusion will be upheld.  *Burch*, 400

17  F.3d at 679.  The Court will only disturb the ALJ's findings if they are not

18  supported by substantial evidence.  *Hill*, 698 F.3d at 1158.

19          Plaintiff challenges the ALJ's interpretation of the evidence.  ECF No. 18 at

20  8-10.  However, the ALJ explained that he found the reviewing opinions about

ORDER - 21

1  Plaintiff's social functioning consistent with the record, "which illustrates [she] has

2  some difficulties in dealing with being in the public or crowded place[s] and

3  interacting closely with some people but managed to maintain good relationship[s]

4  with her family, babysit children, play with her niece . . . [she] is cooperative

5  friendly, pleasant, polite . . . talk[s] normally at appointments and evaluations" and

6  that "therefore, the [ALJ] adapts the State agency opinions with regard to the

7  [Plaintiff's] social functioning" in formulating Plaintiff's RFC.  Tr. 29.  The ALJ's

8  explanation and interpretation of the social limitations is reasonable.

9      Further, the ALJ similarly explained he departed from Dr. Lewis's and Dr.

10  Harrison's opinion that Plaintiff was able to sustain concentration and persist at

11  complex tasks due to evidence she had only fair memory and concentration at

12  times and had "problems with situational stressors."  Tr. 28.  The ALJ also adapted

13  this portion of the opinion in formulating the RFC; he limited Plaintiff to work

14  "that requires only the ability to understand, remember and carry out simple

15  instructions, exercise simple workplace judgement, perform work that is learned on

16  the job in less than 30 days by short demonstration and practice or repetition."  *Id.*

17  While Plaintiff does not challenge the ALJ's departure from the opinion she could

18  sustain concentration to perform complex tasks, Plaintiff contends the ALJ erred

19  by omitting the limitation to work in a predictable work environment.  ECF No. 18

20  at 8-9.  However, the ALJ's RFC limiting Plaintiff to simple instructions, simple

ORDER - 22

workplace judgment, and performing work that can be learned on the job in less than 30 days by practice and repetition adequately incorporates the limitation to a predictable work environment and is a reasonable translation of the opinions of Dr. Lewis and Dr. Harrison.  The ALJ's findings are reasonable and supported by substantial evidence.

Plaintiff is not entitled to remand on these grounds.

**B. Step Five**

Plaintiff contends the ALJ erred at step five.  ECF No. 18 at 5-7, 9-10.  At step five of the sequential evaluation analysis, the burden shifts to the Commissioner to establish that 1) the claimant can perform other work, and 2) such work "exists in significant numbers in the national economy."  20 C.F.R. § 416.960(c)(2); *Beltran*, 700 F.3d at 389.  In assessing whether there is work available, the ALJ must rely on complete hypotheticals posed to a vocational expert.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ's hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant's limitations.  *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001).  The hypothetical should be "accurate, detailed, and supported by the medical record."  *Tackett*, 180 F.3d at 1101.

The hypothetical that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical that is predicated on the ALJ's final RFC

ORDER - 23

assessment, must account for all the limitations and restrictions of the claimant. *Bray*, 554 F.3d at 1228.  As discussed above, the ALJ's RFC need only include those limitations found credible and supported by substantial evidence.  *Bayliss*, 427 F.3d at 1217 ("The hypothetical that the ALJ posed to the VE contained all of the limitations that the ALJ found credible and supported by substantial evidence in the record.").  "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy."  *Id*.  However, the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."  *Greger v. Barnhart*, 464 F.3d 968, 973 (9th Cir. 2006).  Therefore, the ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant's counsel if they are not supported by substantial evidence.  *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  A claimant fails to establish that a step five determination is flawed by simply restating an argument that the ALJ improperly discounted certain evidence, when the record demonstrates the evidence was properly rejected.  *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008).

Plaintiff contends the ALJ erred by departing from the limitations imposed by Dr. Martin and the state agency psychologists in his RFC and the hypothetical

ORDER - 24

posed to the vocational expert.  ECF No. 18 at 5-7, 9-10.  However, Plaintiff's argument is based on the assumption that the ALJ erred in his analysis of the opinion evidence.  As addressed *supra*, the ALJ properly assessed the medical opinion and other evidence.

For reasons discussed throughout this decision, the ALJ's consideration of the medical opinion evidence is legally sufficient and supported by substantial evidence.  The ALJ has the discretion to evaluate and weigh the evidence and the Plaintiff's alternative interpretation of the evidence does not undermine the ALJ's analysis.  The ALJ did not err in assessing the RFC or finding Plaintiff capable of performing work existing in the national economy, and the RFC adequately addresses the medical opinions in this record.  Plaintiff is not entitled to remand on these grounds.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.  Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 18**, is **DENIED**.

ORDER - 25

3. Defendant's Motion for Summary Judgment, **ECF No. 20**, is **GRANTED**.

4. Plaintiff's Supplemental Motion for Summary Judgment, **ECF No. 26**, is **DENIED as moot**.

5. Plaintiff's Unopposed Motion to Strike Issue Raised in Briefing, **ECF No. 31**, is **GRANTED**.

6. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED May 26, 2022.

_s/Mary K. Dimke_
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 26